**WARNICKE & LITTLER, P.L.C.**
1411 N. Third Street
Phoenix, Arizona 85004
TELEPHONE (602) 256-0400
FAX (602) 256-0345
E-MAIL: administrator@warnickelittler.com
Thomas E. Littler/SBN 006917
Robert C. Warnicke/SBN 015345
Attorneys for The Howard E. Walder
Trust, Berta Walder IRA, Howard
Walder IRA, Harish P. Shah, Harish
Shah IRA, Madhavi H. Shah IRA,
Tom Hirsch, Howard Walder, Berta Walder,

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **RADICAL BUNNY, LLC.** | Chapter 11 Proceeding |
| Debtor. | Case No. 2:08-bk-13884-CGC |
| | **OBJECTION TO APPROVAL OF DISCLOSURE STATEMENT BY** |
| | **Hearing Date:** December 2, 2009<br>**Hearing Time:** 10:00 a.m. |

The Howard E. Walder Trust, Berta Walder IRA, Howard Walder IRA, Harish P. Shah, Harish Shah IRA, Madhavi H. Shah IRA, Tom Hirsch, Howard Walder, Berta Walder, ("Objectors") by and through their undersigned counsel, hereby Objects to the approval of the Disclosure Statement in Support of Plan of Reorganization Proposed by the Chapter 11 Trustee (the "Trustee's Disclosure Statement") under 11 U.S.C. §1125.

This objection is supported by the accompanying Memorandum of Points and Authorities which is incorporated herein by this reference.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Trustee's Disclosure Statement cannot be approved because it contains materially false and misleading representations of fact, it omits information important to a creditor making an informed judgment on the plan; it fails to include the form of attachments. In summary, the grounds for this objection are that the document is rife with false statements, misleading statements, and omissions of important facts concerning administrative claims and the Objector's refusal to subordinate their own participation claims. As written, the document attempts to induce the creditors to support a Plan based on false and defamatory statements about the pre-petition actions of the managers of Radical Bunny LLC ("Radical Bunny") by omitting material facts relevant to the Plan distributions.

## II. STANDARD FOR APPROVAL OF THE DEBTOR'S DISCLOSURE STATEMENT

For the Court to approve the Trustee's Disclosure Statement it has to provide the "adequate information" required by 11 U.S.C. § 1125(a). Adequate information is "information of a kind and in sufficient detail…that would enable a hypothetical reasonable investor to make an informed judgment about the plan." *See In re Rock Broadcasting of Ohio*, 154 B.R. 970, 977 (Bankr. Idaho 1993); *In re A.C. Williams*, 25 B.R. 173, 176 (Bankr. N.D. Ohio 1982); *In re Malek*, 35 B.R. 443, 444 (Bankr. E.D. Mich. 1983); *In re Metrocraft Publishing Services, Inc.*, 39 B.R. 567 (Bankr. N.D. Ga. 1984); and *In re Seioto Valley Mortgage Company*, 88 B.R. 168, 170-171 (Bankr. S.D. Ohio 1988). A disclosure statement that fails to take into account priority claims in a liquidation analysis does not provide adequate information, and cannot support the confirmation of a plan. *In re Crowthers McCall Pattern*,

-- Page 2

*Inc.*, 120 B.R. 279, at 300 (S.D. New York 1990).

As we discuss in detail below, the Debtor fails to provide "adequate information" on numerous issues and makes false and defamatory statements. Certainly, that fact is material to a creditor's decision to accept or reject the Plan. This Court must, therefore, deny approval of the Joint Creditors' Disclosure Statement.

## II. DEFICIENCIES IN THE DEBTOR'S DISCLOSURE STATEMENT AND HOW IT FAILS TO PROVIDE "ADEQUATE INFORMATION" TO CREDITORS

### A. Background Facts

1. <u>Overview of the Radical Bunny Operations.</u>

Radical Bunny was formed to make loans to Mortgages Ltd. using funds from various individuals seeking a more favorable rate of return than available from other financial products. Radical Bunny received funds from family members, relatives, and friends of the four members of Radical Bunny which monies were pooled and loaned to Mortgages Ltd. when it had a loan available in which to participate. Mortgages Ltd had a one million dollar minimum loan amount, which required Radical Bunny to pool money from participants in order to take part in the favorable rate offered by Mortgages Ltd. Radical Bunny did not solicit, sell interests, or make offerings to receive monies for making the loans. Quite the contrary, persons came to Radical Bunny requesting that they be allowed to participate in a group loan. Participation became so popular that at the time of the filing of the involuntary petition commencing this case, there were more than 900 persons who participated in the Mortgages Ltd. loans. These persons were called loan "participants." They were not called, nor were they considered to be, "investors" in Radical Bunny.

The loans made by Radical Bunny to Mortgages Ltd. were evidenced by promissory

-- Page 3

notes and loan documents. At the time of the filing of this involuntary case, Mortgages Ltd. owed Radical Bunny $197,232,758 evidenced by 99 separate promissory notes and other documents. Radical Bunny asserted that its loans were fully secured by all of the Mortgages Ltd. assets. While the validity of the security interest was initially a concern in the Mortgages Ltd. Chapter 11 case, the issue was settled, the Mortgages Ltd. plan of reorganization was confirmed, and there was never a judicial determination which denied Radical Bunny's secured status. Radical Bunny's position was so strong that it is treated in the Mortgage's Ltd Plan as a secured creditor for $167 million dollars of its $198 million dollar claim.

The Objectors were all loan participants having advanced a collective total of approximately $12,000,000 to Radical Bunny for Mortgages Ltd. loans. Four of the Objectors were also members of Radical Bunny.

2. <u>The Securities and Exchange Commission and Arizona Corporation Commission Actions.</u>

The Securities and Exchange Commission ("SEC") and the Arizona Corporations Commission ("ACC") have each brought *civil* actions against Radical Bunny and its members seeking relief related to a claim that the participation in Radical Bunny was a "security" that was solicited and sold by unregistered securities dealers. The member/Objectors are vigorously defending the claims made by the SEC and the ACC. The members/Objectors were never told by Radical Bunny's attorneys, Quarles & Brady, that a participation with Radical Bunny was a security or that it violated any securities laws, state or federal. Quarles & Brady was specifically retained to make sure Radical Bunny was operated in accordance with securities laws.

3. <u>The Trustee's Plan and Disclosure Statement.</u>

-- Page 4

The Trustee in this Chapter 11 case has now proposed a plan that depends on the Radical Bunny members and insiders ("Insiders") agreeing to subordinate their substantial participation claims against Radical Bunny. The Insider's participation claims are exactly the same as the participation claims as all the other participants. To accomplish this unfair discrimination, the Trustee alleges, or at least implies, inequitable conduct by the Insiders justifying such subordination based on unproven and disputed allegations made by the ACC and the SEC. More important to the objection at hand, the Trustee misrepresents in the Debtor's Disclosure Statement the nature of the participations and uses improper and inflammatory words that would lead investors to conclude that wrongdoing and even criminal conduct occurred when in fact none has been proven (and in the case of criminal conduct, not even charged).

A. **Misleading Statements in the Introduction and Summary**

The Introduction and Summary contain the following false and misleading statements that are designed to mislead and inflame creditors. Those include:

- At the fourth paragraph of the "Overview" the Trustee states that he "believes that continued operations after confirmation of the Plan provides Creditors and holders of Equity Interest with the maximum possible recovery under the circumstance." This is misleading. There are no "continuing operations" for Radical Bunny. As pointed out in section V.B.4 of the Trustee's Disclosure Statement, the Reorganized Debtor is not going to "continue operations" but is involved in pursuit of litigation and liquidation. Moreover, it is all the more misleading because Radical Bunny ceased "operating" on June 2, 2008 when the Mortgages Ltd. problems began to surface and all new participation requests

-- Page 5

were refused and all pooled monies on hand were returned. The fact that there could be "continued operations" after plan confirmation ignores this important fact and misleads a hypothetical creditor into believing that Radical Bunny, and therefore its members, continued operations even after Mortgages Ltd. failures were revealed.

- The Trustee's Disclosure Statement then goes on to state that its liquidation analysis supports this conclusion. Since one is not attached, a creditor is unable to make any reasoned analysis to confirm or deny the Trustee's conclusion.

- In section B the Trustee uses the word "investors" when referring to the Radical Bunny participants. The Trustee contains no factual or legal support for calling participants "investors." Moreover, the use of that word is improper and designed to inflame the participants against the members and to convince them to vote in favor of a plan that relies on unsupported allegations of securities violations. The importance of such reliance to Creditors of the Estate is pointed out below.

- In section C of the Trustee's Disclosure Statement, the Trustees summary of the classes and treatment of claims is misleading and omits key information essential to reasoned consideration of the plan. For example, the Disclosure Statement fails to advise Creditors that the Insiders will not voluntarily agree to subordinate their claims and can not be "deemed" to do so as a matter of law.[1] Indeed, Creditors should be informed of the following key facts relevant to such

---

[1] The Insiders will file and serve a separate notice that they do not consent to this subordination of their claims. To avoid any doubt, they also proclaim their refusal to subordinate here.

-- Page 6

subordination: First, that any subordination cannot occur without the Trustee commencing an adversary against the Insiders; Second, The Trustee should disclose the required elements of proof necessary to succeed in such an action along with whatever factual basis he claims to have to support each element of proof so Creditors can come to their own conclusion as to the likelihood of success of such an action; Third, the Trustee should disclose the estimated cost of such an action verses the anticipated benefit; and Fourth, the Trustee should disclose the impact of the indemnity agreement in the Radical Bunny Operating Agreement and the Estate's obligation to pay for the defense by the Insiders for such an action and the fact that the expense for this defense is an administrative claim with priority over the payment of unsecured creditors.

- The Trustee's Disclosure Statement fails to discuss how his plan can get confirmed when it discriminates against the Insiders who assert, and believe that they will prove, that they did not violate either State or Federal Securities laws and did nothing inequitable.

- The Statement at the bottom of page 5 that "the Debtor strongly recommends" Creditors to vote on the Trustee's plan is misleading without a description of who on behalf of the Debtor is making this recommendation.

**B.     The "Background of the Debtor" in the Trustee's Disclosure Statement Contains Material Misrepresentations and Omissions**

- The Trustee's Disclosure Statement states in its Overview and History that Radical Bunny was "created to *solicit* investments from individuals and personal

-- Page 7

trusts..." This statement is materially and factually false and is designed to and will inflame Creditors against the Insiders by misleading them to believe that state and federal securities laws have been violated. Radical Bunny never solicited investments or participants. Such a statement also misleads as to the likelihood of success on the promised action for equitable subordination. The facts are more simple. These participations started when partners in an accounting firm and some old friends started pooling money so that they could participate in the returns being paid by Mortgages Ltd. on loans it was making. Mortgages Ltd. required a minimum amount for involvement beyond the ability of the individuals. This turned out to be so successful that many other friends and relatives sought to participate. Radical Bunny did not solicit participation, did not advertise for participation, and only persons known to the Insiders were allowed to participate. There was no solicitation.

- The use of the word "investors" to refer to the persons who participated in the Mortgages Ltd. loans is misleading throughout the Trustee's Disclosure Statement and is designed to and does mislead and will unfairly inflame Creditors against the Insiders and in favor of an unconfirmable plan.

- The Trustee's Disclosure Statement's statement that "Scott Coles, solicited loans and other investments from Radical Bunny..." is false and materially misleading.

- When discussing the Radical Bunny claims against Mortgages Ltd. the Trustee's Disclosure Statement discusses the challenge to the Radical Bunny security interest in Mortgages Ltd. of certain groups in the Mortgages Ltd. Chapter 11

proceeding, but fails to provide a full and complete discussion of the security interest, the basis for the objections, the evidence proving the validity of the security interest, and the resolution of the dispute. By commenting on the objection, but not giving the complete facts, the Trustee's Disclosure Statement becomes misleading and designed to inflame Creditors against the Insiders and mislead about the viability of the promised subordination case.

- The Trustee's Disclosure Statement refers to an Appendix 3. There is no Appendix 3.

- The discussion of the Radical Bunny assets is incomplete. The Trustee should be required to list: (1) all its potential causes of action; (2) against whom they will be brought (3) the claims that will be asserted; (4) the anticipated benefit; and (5) the anticipated cost. Moreover, an informed creditor will want to know that the success of claims against the Radical Bunny professionals will depend on the cooperation of the Insiders and how that cooperation will be obtained in light of the terms of the proposed plan. An informed creditor will want to know the Trustee's opinion of the amount of recovery that is likely to be obtained from the prosecution of such claims so that the amount of any dividend can be anticipated.

- In section B, Prepetition Debt Structure, the Trustee makes the following false statement: "the Debtor's sole debts were in the nature of Participant funds advance to the Debtor *in response to various offering memoranda.*" The Debtor never sent participants with Radical Bunny offering memoranda, Radical Bunny and the Insiders never sent anything to anyone that could remotely be

-- Page 9

- characterized as an "offering memorandum". There was no solicitation and there was no advertisement to participate in Radical Bunny.

- The Trustee makes false statements in section D of his Disclosure Statement that should be corrected and clarified to avoid being misleading. Those are: First, that prior to the death of Scott Coles, there was no indication to the Radical Bunny management that Mortgages Ltd was in any financial trouble. Otherwise, person reading the Trustee's Disclosure Statement could be mislead into believing that the Insiders had some prior knowledge supporting an equitable subordination claim. Second, the Trustee's Disclosure Statement is misleading and internally inconsistent when it states that Mortgages Ltd is the sole source of the recovery for the Radical Bunny loans. Preceding this statement is another albeit brief and incomplete, discussion of other sources of recovery.[2] If the statement is intended to refer to the time period prior to the commencement of the Mortgages Ltd problems and the commencement of the claims against professionals, than it should so state to be accurate.

- Further, in that same section, the Trustee states that the state and federal authorities had begun investigations of the principals of Radical Bunny "before the Chapter 11 case began and before Scott Coles suicide." The Objectors are not aware of any investigation of the Insiders at that time. Before the Trustee should be allowed to publish such potentially defamatory and misleading information, he should be required to describe the source of this information and

---

[2] These other sources of recovery are important because some participants may have waived their right to receive distributions from the recovery efforts against third parties as a result of obtaining a theft loss

-- Page 10

describe the dates and investigations with specificity.

- The Trustee compounds his misleading attack on the Insiders by referring to "potentially criminal investigations" of the Insiders without providing any source for this statement. The Objectors are not aware of any "potentially criminal investigations." If this is just the Trustee's opinion, before he should be allowed to damage the reputation of the Insiders, he should disclose the facts supporting any criminal behavior, the details of his factual and legal analysis, and a description of his expertise to render such an opinion. Moreover, the Court should not allow the Trustee to spew unsupported allegations of criminal conduct damaging to the reputation of the Insiders under the possible protection of privilege arising from legal filings such as a plan and an Order approving a Disclosure Statement.

- Likewise, at section B, the Trustee once again carelessly refers to unsupported criminal actions by the Insiders. This time the Trustee does not refer to "potentially" criminal investigations, but flat out refers to <u>the</u> "criminal investigation" that continued after the Petition Date. Once again, the Insiders know of no criminal investigations that have ever occurred relating to the Radical Bunny operations. This statement is false and designed to and does mislead Creditors into believing that the Insiders are subject to equitable subordination as well as being defamatory and harmful to their reputations.

- The Trustee's unsupported reference to criminal prosecutions continues in section D. The Trustee should remove this reference or be required to support

---

deduction as the result of filing an amended tax return.

-- Page 11

his "belief" with a factual and legal basis for such a belief.

- Section D also misstates the SEC action brought against the Insiders. There is no criminal action by the ACC, SEC, or the Department of Justice. To be accurate, the Trustee's Disclosure Statement should contain a full description of the Insiders defenses so that Creditors can make an informed judgment regarding the lack of success of the SEC's case.

C. **The Description of the Plan Section in the Trustee's Disclosure Statement Contains Material Misrepresentations and Omissions**

- The description of the Administrative Claims fails to include an estimate of the amount of those claims.

- The description of the Administrative Claims fails to discuss the impact of the indemnity claims of Radical Bunny, an estimate of the amount, their priority, and how these claims will be paid. Moreover, since the litigation from which the Insiders are entitled to indemnity from the Estate may not be resolved prior to confirmation of the plan, the Trustee fails to discuss a method of payment of such post petition claims nor the creation of a reserve to ensure payment before distribution to those in a lower priority. Without such a description and process, the disclosure statement does not provide adequate information to the creditors about the potential plan distributions. *In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, at 299 (S.D. New York 1990 (liquidation analysis did not account for uncertainty of priority claims— court ordered new disclosure of new liquidation analysis).

-- Page 12

- Section E.2 of the Trustee's Disclosure Statement fails to discuss the refusal of the Insiders to voluntarily subordinate their claims nor the impact of such a refusal on whether the plan is confirmable and feasible.
- Also, the Trustee's Disclosure Statement fails to discuss the factual and legal basis for any claim of equitable subordination.

D. **The Implementation Section of the Trustee's Disclosure Statement Contains Material Misrepresentations and Omissions**

- The Trustee discloses that the Reorganized Radical Bunny Manager will be "governed in all respects by the Reorganized Radical Bunny Operating Agreement." No document is attached which would allow a Creditor to make a reasoned judgment about how the Reorganized Radical Bunny will be managed. The Trustee's Disclosure Statement should not be approved without the Objectors being given the opportunity to evaluate them in advance.
- The disclosure of the names of the manger and the board is important to a reasoned judgment of a hypothetical creditor because some persons otherwise qualified to serve on the board may have a conflict of interest relating to the fulfillment of their duties. This conflict arises from the filing by a participant of an amended Tax Return claiming a "theft loss" from their participation in Radical Bunny. For instance, Objectors believe that several participants who could be involved in management of the reorganized Debtor, have filed such an amended tax return. The impact of the tax return should be to reduce their

-- Page 13

claim and prevent them from receiving any recovery from third parties by Radical Bunny. Participants that filed the amended returns are not entitled to the same distribution as other participants, and, as a result, have different motivations and a conflict of interest.

E. **The Executory Contact and Unexpired Leases Section of the Trustee's Disclosure Statement Contains Material Misrepresentations and Omissions.**

- At section C the Trustee rejects as an executory contract "any obligation of the Debtor to indemnify, reimburse, or limit the liability of any officer or director of the Debtor....related to any acts or omissions occurring before the Petition Date. An executory contract is defined as one where "performance remains due to some extent from both sides." *In re Robert L. Helms Construction & Development Co., Inc.* 139 F.3d 702 (9th Cir 1998) (citing *National Labor Relations Board v. Bildisco and Bildisco*, 465 U.S. 513, 522-23 n. 6, 104 S.Ct. 1188, 1194 n. 6, 79 L.Ed.2d 482 (1984). The Trustee omits to discuss how such obligations can be deemed executor contracts and rejected, when the managers of Radical Bunny already performed and the only performance now due is from the Debtor.

- Also important, is that the Trustee fails to consider whether such obligations are administrative claims (see discussion above) and the potential amount of the Claims arising from such a rejection.

F. **The Risk Factors Section of the Trustee's Disclosure Statement Contains Material Misrepresentations and Omissions**

-- Page 14

- The Trustee takes another parting shot at Insider Mr. Hirsch when he says in section A that:

   > For example, any claims asserted against Tom Hirsch may ultimately prove difficult to collect, considering the substantial legal challenges Tom Hirsch currently faces and is likely to face in the future in connection with his management of Radical Bunny before the Chapter 11 case began.

   This is nothing than rank speculation directed at one person without any support whatsoever and which defames Mr. Hirsch. Such a comment should be removed.

### III. CONCLUSION AND RELIEF SOUGHT

For all the reasons discussed above, the Debtors' Disclosure Statement does not contain adequate information and should not be approved by the Court. It is impossible for the Insiders to prove a negative concerning the false statements about an alleged "offering memorandum" used to "solitict" "investors", "criminal investigations" or other "investigations". Surely it is not too much to ask for the Trustee to provide some support before the Court endorses a disclosure statement containing these defamatory statements.

RESPECTFULLY SUBMITTED this 23rd day of November, 2009.

                                                WARNICKE & LITTLER, P.L.C.

                                                By _____
                                                     Thomas E. Littler
                                                     Robert C. Warnicke
                                                     1411 N. Third Street
                                                     Phoenix, Arizona 85004
                                       Attorneys for The Howard E. Walder
                                       Trust, Berta Walder IRA, Howard
                                       Walder IRA, Harish P. Shah, Harish
                                       Shah IRA, Madhavi H. Shah IRA,
                                       Tom Hirsch, Howard Walder, Berta Walder,

COPIES sent via the U.S. Bankruptcy
Court's ECF noticing system this
23rd day of November, 2009

**COPY** served via regular US mail or
e-mail this 23rd day of November, 2009,
to:

Shelton L. Freeman
DeCONCINI McDONALD YETWIN & LACY, P.C.
6909 E. Main Street
Scottsdale, AZ 85251
Special Counsel for Chapter 11 Trustee
And Special Counsel for Debtor

Paul Sala
ALLEN SALA & BAYNE, PLC
Viad Corporate Center
1850 North Central Ave., Ste. 1150
Phoenix, AZ 85020
Email: psala@asbazlaw.com
Attorneys for Radical Bunny, LLC

Carlos Arboleda
ARBOLEDA BRECHNER
4545 East Shea Boulevard, Ste. 120
Phoenix, AZ 85028
Email: arboledac@abfirm.com
Attorneys for Petitioning Creditors

Jonathan Hess
Larry Lee Watson
OFFICE OF THE U. S. TRUSTEE

-- Page 16

```
 1 │ 230 North 1st Ave., Ste. 204
   │ Phoenix, Arizona 85007
 2 │
   │ Carolyn Johnsen
 3 │ Brad J. Stevens
   │ JENNINGS STROUSS & SALMON, PLC
 4 │ The Collier Center, 11th Fl.
   │ 201 E. Washington Street
 5 │ Phoenix, Arizona 85004-2365
   │ Email: cjohnsen@jsslaw.com
 6 │ Email: bstevens@jsslaw.com
   │ Attorneys for Mortgages Ltd.
 7 │
   │ U.S Securities and Exchange Commission
 8 │ Attn: David S. Brown & John McCoy, III
   │ 5670 Wilshire Blvd., 11th Fl.
 9 │ Los Angeles, CA 900326-3648
   │ Email: browndav@sec.gov
10 │ Email: mccoy@sec.gov
   │
11 │ U. S. Securities and Exchange Commission
   │ Attn: Sandra W. Lavigna
12 │ 5670 Wilshire Blvd., 11th Fl.
   │ Los Angeles, CA 90036-3648
13 │ Email: lavignas@sec.gov
   │
14 │ David Wm. Engelman
   │ Seven N. Berger
15 │ Kevin M. Judiscak
   │ Bradley D. pack
16 │ ENGELMAN BERGER, P.C.
   │ 3636 N. Central Ave., Ste. 700
17 │ Phoenix, AZ 85012
   │ Email: dwe@engelmanberger.com
18 │ Email: snb@engelmanberger.com
   │ Email: kmj@engelmanberger.com
19 │ Email: bdp@engelmanberger.com
   │ Attorneys for Tempe Land Company, LLC
20 │
   │ Thomas J. Salerno
21 │ Jordan A. Kroop
   │ SQUIRE, SANDERS & DEMPSEY, L.L.P
22 │ Two Renaissance Square, Ste. 2700
   │ 40 N. Central Ave.
23 │ Phoenix, AZ 85004-4498
   │ Email: tsalerno@ssd.com
24 │ Email: jkroop@ssd.com
   │ Attorneys for G Grant Lyon, Chapter 11 Trustee
25 │   For Radical Bunny, LLC
   │
26 │ Richard M. Lorenzen
   │ PERKINS COIE BROWN & BAIN, P.A.
27 │ 2901 N. Central Ave., Ste. 2000
   │ Phoenix, AZ 85012-2788
28 │ Email: RLorenzen@perkinscoie.com
```

-- Page 17

Attorneys for Official Committee of
   Unsecured Creditors of Radical Bunny, LLC


Cathy L. Reece
Keith L. Hendricks
FENNEMORE CRAIG, P.C.
3003 N. Central Ave., Ste. 2600
Phoenix, AZ 85012
Email: creece@fclaw.com

Scott Goldberg
SCHIAN WALKER, P.L.C.
3550 N. Central Ave., Ste. 1700
Phoenix, AZ 85012-2115
Email: ecfdocket@swazlaw.com

Richard G. Patrick
U. S. ATTORNEY'S OFFICE
Two Renaissance Square
40 N. Central Ave., #1200
Phoenix, AZ 85004-4408

Christopher C. Simpson
STINSON MORRISON HECKER LLP
1850 N. Central Ave. #2100
Phoenix, AZ 85004
Email: csimpson@stinson.com

Bryce A. Suzuki
BRYAN CAVE LLP
2 N. Central Ave. #2200
Phoenix, AZ 85004
Email: Suzuki@bryancave.com

Larry Lee Watson
OFFICE OF U. S. TRUSTEE
230 N. First Ave., Ste. 204
Phoenix, AZ 85003-1706
larry.watson@usdoj.gov


By _____